UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCES BONNIE HOELPER,
and MICHAEL SWANN,

    Plaintiff,

v.                              Case No. 8:10-cv-01324-EAK-EAJ

JIM COATES, SHERIFF OF PINELLAS
COUNTY, et al,

    Defendants.
_____/

## ORDER ON DEFENDANTS' DISPOSITIVE MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant, William Wiltse's, ("Deputy Wiltse") Motion for Summary Judgment (Doc. 51), Defendant, Mark Zirkel's, Motion for Summary Judgment (Doc. 37), and Plaintiff, Frances Hoelper's, ("Hoelper"), Response in Opposition to the motions (Doc. 60; Doc. 61). The Court, having considered the motions, response, and being otherwise advised in the premises, concludes that the Defendants' Motions for Summary Judgment should be GRANTED.

## BACKGROUND

This matter involves claims brought under 42 U.S.C. § 1983 for violations of Hoelper's Fourth Amendment rights and for malicious prosecution. Hoelper had originally filed a four-count complaint against Deputy Wiltse, Deputy Mark Zirkel, and Jim Coats, the Sheriff of Pinellas County. (Doc. 1). Three of the four counts have subsequently been dismissed including the naming of Jim Coats as a party leaving only

Count II. (Doc. 21; Doc. 25). Count II of the Complaint essentially alleges that Daniel Zirkel, Daniel's brother Deputy Mark Zirkel, and Deputy Wiltse entered into a conspiracy to falsely arrest and maliciously prosecute Hoelper. (Doc. 1).

Prior to June 11, 2006, the Zirkels and Hoelper had been in a feud regarding Hoelper's complaints made to the Pinellas County Environmental Control and Code Enforcement regarding a violation she observed at the Zirkels residence. On June 11, 2006, Daniel and Meranda Zirkel believed they observed Hoelper trespassing while walking two dogs in a field. The Zirkels then began to take pictures of Hoelper trespassing. The two parties got into an altercation that resulted in Hoelper being detained against the Zirkels' Cherokee, partially inside the vehicle, until Mr. and Mrs. Locy, arrived. The Locys were neighbors of both the Zirkels and Hoelper and, after hearing Hoelper's screams for help, came to assist.

According to Hoelper, Daniel Zirkel started the altercation by reaching out, picking her up, and dragging her into the vehicle. Alternatively, the Zirkels allege it was Hoelper who initiated the altercation by lunging into the vehicle through the driver's side window in an attempt to take the Zirkels' camera. Although both parties dispute who started the incident, they agree that Hoelper was held partially inside of the vehicle until the Locys' heard Hoelpers screams and came to assist at which point Daniel Zirkel released her. The Locys later stated that at the time they came to assist Hoelper, they did not see any scratches on Daniel Zirkel.

During the altercation, Hoelper alleges that Daniel Zirkel contacted his brother, Deputy Mark Zirkel, with the intent to form a conspiracy between himself, his brother, and Deputy Wiltse, who had been called by the dispatch to respond to the call, to have

Hoelper arrested. Portions of the conversation between Daniel and Mark Zirkel can be heard via a 911 transcript as Meranda Zirkel was on the phone with a 911 operator while her husband and Hoelper were involved in the physical conflict.

Deputy Wiltse and a second deputy arrived shortly after the dispute had calmed down. Deputy Wiltse first talked to the Zirkels separately, and at that point, noticed scratches on Daniel Zirkel's face and arm. The Zirkels each told Deputy Wiltse that it was Hoelper who initiated the fight in an attempt to seize the camera.

Deputy Wiltse then spoke to Mr. and Mrs. Locy about what they had seen and they both stated that neither one of them saw who initiated the attack. Deputy Wiltse then spoke to Hoelper. Hoelper told Deputy Wiltse that it was Daniel Zirkel who initiated the altercation by reaching out of the driver's side window, picking her up, and dragging her halfway into the car with her blouse over her head.

Deputy Wiltse then requested a forensic specialist, Jennifer Hall, to be dispatched to their location to collect evidence. Hall did not take any fingerprints or DNA samples but did take a full length picture of Hoelper as well as pictures of the Zirkels and pictures of the Zirkels digital camera viewer.

Based on his own experience and the information provided by all of the parties involved, Deputy Wiltse placed Hoelper under arrest for felony burglary and battery. After the arrest Deputy Wiltse sent an e-mail to Deputy Zirkel letting him know of the outcome stating "x15 Burglary/Battery, OUTSTANDING!!!!!!!!, That would have been a long ride, HA HA HA.....yea definitely," which Hoelper alleges is further evidence of the conspiracy. The State Attorney's Office later dropped the felony burglary charge and

lowered the battery to a misdemeanor battery, and in 2007 Hoelper was found not guilty of the reduced charge.

## DISCUSSION

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. *Id*. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Chelates Corp. v. Citrate*, 477 U.S. 317, 324 (1986). The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49. This Court may not decide a genuine factual dispute at the

summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a question for the fact finder. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

The defense of "qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Bashir v. Rockdale County*, 445 F.3d 1323, 1327 (11th Cir. 2006) (citation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir.2003) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002))."If the official was acting within the scope of his discretionary authority . . . the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Skop*, 485 F.3d at 1136-37. 82). Qualified

immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986). Moreover, "[b]ecause qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.'" *Gonzalez*, 325 F.3d at 1233 (citations omitted).

"To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). In making these determinations, the government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000) (citations omitted). Importantly, the official's subjective intent is irrelevant to the inquiry. *Id.*

In the matter at hand, the Defendants assert the defense of qualified immunity as arguable probable cause existed at the time of the arrest. Plaintiff Hoelper alleges that no probable cause existed at the time of the incident and the investigation performed was biased in nature based on the evidence obtained. Hoelper primarily relies on the facts that Deputy Wiltse did not use his computer to check the parties arrest records, he did not attempt to listen to the 911 call at the scene, and the forensic technician did not take DNA swabs or fingerprints or appropriate pictures. Although these items may have been useful in furthering the investigation, Hoelper has not provided any information alleging that this was a violation of police investigative protocol or what a reasonable officer in the same circumstance would have done.

Upon arriving at the scene of the incident, Deputy Wiltse states that he noticed scratches on Daniel Zirkel's arm and face. Deputy Wiltse then spoke to the Zirkels separately and they informed him that they were taking pictures of Hoelper trespassing which lead to Hoelper lunging into the Cherokee in an attempt to take the camera. This led to an altercation between Hoelper and Daniel Zirkel. Daniel states that Hoelper subsequently scratched his arm and face until he restrained Hoelper against the car. Hoelper remained restrained against the car until the Locys arrived. During this altercation Mrs. Zirkel was on the phone with the 911 operator.

After initially talking to the Zirkels, Deputy Wiltse then interviewed the Locys and was informed that neither Mr. nor Mrs. Locy actually saw who initiated the altercation and were, therefore, not able to assist him in his investigation. Mr. and Mrs. Locy have both subsequently stated in their depositions that they did not notice any scratches upon Daniel Zirkel's face or arms before he parked his Cherokee at his house. Deputy Wiltse then spoke to Hoelper. Hoelper alleges it was Daniel Zirkel who initiated the attack when he picked her up from where she was standing two feet outside of the vehicle and dragged her half way into the Cherokee until the Locys arrived.

Based upon Deputy Wiltse's training and experience and taking into account Daniel Zirkel's fitness, the vehicle type, and the scratches on Daniel Zirkel's face and arms, he determined that Daniel Zirkel's explanation was more plausible. As a result of his findings, Deputy Wiltse arrested Hoelper for felony burglary and assault. (Doc. 37). The crime of burglary is defined under Fla. Stat. § 810.02(b)(1) as "Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein . . ." Fla. Stat. § 810.02(b)(1) (2010). The crime of criminal battery is defined as "1. Actually and

intentionally touches or strikes another person against the will of the other; or 2. Intentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a) (2010).

    During discovery, Deputy Wiltse was questioned as to why he did not listen to the 911 call, check the priors of both parties, retrieve DNA and fingerprint samples, or retain the Zirkels' camera. In addressing the failure to listen to the 911 call at the scene Deputy Wiltse states that he had never done so before and was not even sure that the recordings would be available. (Wiltse affidavit at 19). Deputy Wiltse then addressed his failure to check the priors on both parties even though the information was readily available on his laptop located in the car by stating that the information was not relevant at the time, even though Daniel Zirkel had a prior burglary charge, because it would not have helped determine who initiated the attack. Next, Deputy Wiltse stated that he did not collect the DNA samples because the DNA samples were typically only used for capital and sexual battery crimes and usually took up to two months to receive the results. (Wiltse affidavit at 20, Hall affidavit at 5). Further, he did not collect any fingerprint samples from the vehicle and people involved because both parties had already admitted that the conflict occurred within the car meaning that both parties fingerprints would be expected to be there. Lastly, Deputy Wiltse stated that he did not take the camera or memory card into evidence because it did not contain information regarding who initiated the attack. (Wiltse affidavit at 18, Hall affidavit at 3).

    Supported by the facts available to Deputy Wiltse under the circumstances, this Court believes that at a minimum arguable probable cause, if not actual probable cause, existed at the time of arrest.

I.  **Malicious Prosecution**

In order "[t]o establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.3d at 1234. The common law tort of malicious prosecution includes the following six elements under Florida law:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Id.*

"In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Id.* at 1235. The existence of probable cause is measured, therefore, at the time the original judicial proceeding is commenced, and not at the time of arrest. *Id.* Defendants to a malicious prosecution claim under § 1983 are entitled to qualified immunity if the plaintiff is unable to show that they acted without probable cause. *Wood v. Kesler*, 323 F.3d 872, 882-83 (11th Cir. 2003) (explaining in relation to a malicious prosecution claim that, where actual probable cause existed, there is no Fourth Amendment violation, and qualified immunity applies).

The fourth element of a claim for malicious prosecution requires a lack of probable cause, and as this Court has previously found that at a minimum arguable

probable cause existed at the time of arrest. Therefore, Hoelper may not succeed on a claim for malicious prosecution.

II.     **False Arrest**

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment" to the United States Constitution. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) (internal citations omitted). "However, if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, [then] he may, without violating the Fourth Amendment, arrest the offender." *Id.* (internal citation and quotation marks omitted). A finding of probable cause is an affirmative defense to the claim of false arrest. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1988). As this Court has previously explained, a minimum of arguable probable cause existed at the time of arrest; therefore, a claim for false arrest by Hoelper is without merit. Accordingly, it is

**ORDERED** that the Motions for Summary Judgment (Docs. 37 and 51) be **GRANTED**. The Clerk of Court is directed to enter judgment for the defendants, William Wiltse and Mark Zirkel, and to close this case.

**DONE AND ORDERED** in Chambers, Tampa, Florida, this 14th day of November, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE